AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>JUSTIN KONIKOW,<br><br>Defendant. | Case No. 2:25-MJ-04469-DUTY |

**LODGED**
CLERK, U.S. DISTRICT COURT
7/18/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: MMC    DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
7/18/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: CGM    DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of between April 1, 2020 and February 18, 2022, in the county of Los Angeles in the Central District of California, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Robert Knight, Special Agent
*Complainant's signature*

Robert Knight, Special Agent, Office of Inspector General, U.S. Small Business Administration
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 07/18/2025

City and state: Los Angeles, California

*Judge's signature*

Hon. A. Joel Richlin, U.S. Magistrate Judge
*Printed name and title*

AUSA: Gregg Marmaro (x8500)

**AFFIDAVIT**

I, Robert Knight, being duly sworn, declare and state as follows:

## I.   **INTRODUCTION**

1.   I have been a federal agent for more than 18 years. Since August 2021, I have been a Special Agent of the U.S. Small Business Administration ("SBA"), Office of Inspector General ("SBA-OIG").  Before that, I was a Special Agent for the U.S. Postal Service, Office of Inspector General and the U.S. Army Criminal Investigation Command.

2.   Since graduating from the U.S. Army Criminal Investigative Division's Apprentice Special Agent Course, I have over ten years of experience investigating various criminal offenses including wire fraud, bank fraud, and money laundering. As such, I have interviewed hundreds of witnesses and targets, participated in the execution of numerous search and arrest warrants relating to financial crimes, and worked with federal prosecutors to prepare investigations for prosecution.

3.   For the past four years, I have focused on investigating crimes associated with SBA-related loan programs including pandemic stimulus funding, sometimes referred to as Covid-19 fraud.  From reviewing dozens of pandemic stimulus loan files and documents associated with those files such as subpoenaed bank records and public records, I have become familiar with the processing and vetting of applications under the Economic Injury Disaster Loan program, among other pandemic-related funding programs.

4. Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods employed by those who conduct fraud schemes using fraudulent loan statements and fabricated documents, money laundering, and identity theft, among other federal offenses. These methods include, but are not limited to, misrepresenting or concealing information about applicants' criminal histories; the use of corporate "shells," i.e., corporations that have been formed through the filing of articles of incorporation but conduct no business; the use of corporations or business entities that have the appearance of legitimacy, such as by conducting some business or at least advertising business, but are used to support fraudulent claims for funding or to conceal the use of loan proceeds; and the filing of applications with material false statements regarding business activity, tax or regulatory filings, or the numbers of employees (where, in many cases, there are none).

## II. **PURPOSE OF AFFIDAVIT**

5. This affidavit is made in support of a criminal complaint against, and request for issuance of an arrest warrant for, JUSTIN KONIKOW ("KONIKOW") for a violation of 18 U.S.C. § 1343 (wire fraud) (the "Subject Offense").

6. The facts set forth in this affidavit are based on my personal observations; my training and experience; witness interviews that I have conducted; reports that I have read of interviews conducted by other law enforcement agents; my review of documents obtained from third parties, either by way of

subpoena or voluntary submission, such as bank or business records; my review of publicly-filed documents such as corporate filings; Internet searches for open source information; financial analyses or financial records summaries prepared by an SBA analyst who told me that she reviewed and prepared such analyses and summaries from bank and other financial records obtained in this investigation, and whom I believe to be qualified to make such analyses and summaries from having worked with her for several years and having reviewed her work product in other matters; and my review of documents created or amassed by the SBA in connection with providing funding for the various loans more fully described below.  Accordingly, absent mention below of specific attribution from any of the above-summarized evidence, I have, solely for clarity, generally omitted attribution for a specific fact.

    7.    My description of the offense conduct below is based on my review of the above-summarized evidence and is provided solely for the purpose of establishing probable cause to believe that KONIKOW committed the Subject Offense.  Accordingly, I have not described all of the evidence that I have reviewed during the course of this investigation and my omission of reference toother evidence should be considered in that light.

    8.    Unless stated otherwise, all conversations and statements described in this affidavit are related in substance and/or in part only; all dates are "on or about" or approximations; all amounts are rounded or close approximations;

and the words "on or about" and "approximately" are omitted for clarity.

### III. SUMMARY OF PROBABLE CAUSE

9. I have probable cause to believe that KONIKOW committed the Subject Offense by submitting and causing to be submitted fraudulent applications to obtain hundreds of thousands of dollars in pandemic stimulus funding by fraudulently misrepresenting material facts about and concealing his recent federal felony conviction. Namely, KONIKOW was convicted in the Central District of California of mail fraud for scheming to defraud the United States, the State of California, and the Employment Development Department out of money by filing false unemployment and disability insurance claims using synthetic identities and fake companies, among other material misstatements and omissions.

### IV. PROBABLE CAUSE

**A. The Economic Injury Disaster Loan Program**

10. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm resulting from the COVID-19 pandemic. The CARES Act authorized taxpayer funds under the Economic Injury Disaster Loan program (individually, an "EIDL," or collectively, "EIDLs"). The EIDL program provided low-interest funding to small businesses, renters, and homeowners affected by the COVID-19 pandemic.

11. To obtain an EIDL, a qualifying business was required to submit an application to the SBA, typically through an online portal, and provide information about its operations, such as the nature of the applicant's business and the number of employees. EIDL applicants were required to certify that all information in the application as provided by the applicant or on behalf of the applicant by their authorized representative was true and correct. The applicant was also required to provide information relating to the criminal history of the applicant's authorized representative.

12. Any funds paid under an EIDL were issued directly by the SBA from CARES Act appropriations by Congress.

### B.  KONIKOW'S Recent, Prior Fraud Conviction in this District

13. I reviewed publicly available documents and learned the following:

    a. On October 7, 2019, an Information charging KONIKOW with one count of mail fraud was filed in the United States District Court, Central District of California, in <u>United States v. Justin Konikow</u>, Case No. 2:19-cr-00605-JAK.

    b. In January 2020, KONIKOW pled guilty pursuant to a plea agreement in which KONIKOW admitted to owning two companies that KONIKOW admitted did not do any business; using stolen identities and submitting phony wage reports with the California Employment Development Department ("EDD"); and submitting false unemployment insurance or disability insurance ("UI/DI") claims with the EDD for fake employees to obtain

benefits to personally use.  KONIKOW admitted that he fraudulently obtained $253,008 of EDD money.

       c.    KONIKOW was allowed to remain on bond pending his sentencing, with a condition that included that he obey all laws.

       d.    In January 2021, Hon. John A. Kronstadt sentenced KONIKOW to 35 months' imprisonment on KONIKOW's mail fraud conviction with the last six months to be served on home confinement, to be followed by 3 years of supervised release, and ordered him to pay restitution of $253,000, with $10,000 due immediately.  KONIKOW asked for and received an approximately six-month period of delay to surrender, to July 6, 2021.

       e.    In June 2021, KONIKOW filed an unopposed request to delay his surrender to accommodate six to nine months' physical therapy to recover from a March 2021 snowboarding accident.  (Dkts. 44, 46 in CR 19-605-JAK.)  Defendant surrendered to the Bureau of Prisons in February 2022.  (Dkt. 48, *Id.*)

       f.    In September 2023, KONIKOW was released from prison to home confinement, and approximately six months thereafter began his three-year period of supervised release. In August 2024, KONIKOW's probation officer filed a petition against him for multiple violations of supervised release including failing to pay restitution despite receiving hundreds of thousands of dollars in cash from the sale of undisclosed assets, failing to disclose business ownership, and failing to first obtain permission to leave the district, no less to repair

6

undisclosed real estate assets. (Dkts. 78, 86, *Id.*). Such violations specifically included KONIKOW's unreported receipt of $82,875 *ten days before his release from prison* that KONIKOW did not pay over in the face of Judge Kronstadt's order that KONIKOW make an immediate restitution payment at sentencing, which he did not. (Dkt. 86, *Id.,* at 7:25-27, 8:1-10.) Judge Kronstadt found KONIKOW violated his supervised release terms and sentenced KONIKOW to five months' imprisonment, to be followed by two years of supervised release. (Dkts. 90,91, *Id.*) KONIKOW remains on federal supervision to this day.

    **C.**    **KONIKOW's EIDL Fraud Based on Misrepresenting and Concealing His Recent Criminal History**

    14.    I reviewed the SBA file for an EIDL and EIDL modifications (loan increases) made to an entity called Trendsetters LLC ("Trendsetters") and learned the following:

        a.    On April 1, 2020, an EIDL application was submitted online, through a server located in Virginia, on behalf of Trendsetters. The application identified KONIKOW as Trendsetter's 100% owner. KONIKOW was identified by his true name, true date of birth, and true residence address matching the corresponding information of his driver's license. The application stated that both Trendsetters and KONIKOW shared the same address, a residence located in Ontario, California, within the Central District of California, matching that of KONIKOW's residence as stated on his driver's license. (I know from reviewing California corporate filings that Trendsetters was incorporated in the State of California in 2017 and that KONIKOW

7

was identified in its initial Statement of Information, filed on May 30, 2017, as its sole manager and its chief executive officer.)

    b. The April 1, 2020 EIDL application contained the representations that neither the business nor a "listed owner" (i.e., KONIKOW, who was listed on the application as Trendsetter's sole owner) were "presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction" nor had the business or a "listed owner" (i.e., KONIKOW) "for any criminal offense [] ever been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation[.]"

    c. Three EIDL modifications to increase the total EIDL proceeds were submitted between 2021 and 2022, each identifying KONIKOW as Trendsetter's sole owner and authorized representative.  Each modification application contained a certification that all representations in the loan application (including in the original application) were true, correct, and complete, under penalty of perjury.  None of the modification applications provided any information that KONIKOW had suffered any criminal conviction.

  15. The SBA approved the EIDL and each modification application and wire-transferred the loan proceeds into a Chase bank account identified on the applications as ending in 1692 ("Chase 1692") in the amounts of, respectively, $89,000; $270,000; $183,300; and $262,700.

16. I reviewed subpoenaed bank records for the Chase 1692 and learned the following:

    a. KONIKOW was the sole signatory for the account and was identified on the bank signature card/account application by his true name, date of birth, California driver's license and Social Security number. (His name and date of birth matched those on the EIDL applications.)

    b. All of the EIDL and EIDL modifications proceeds were deposited into the Chase 1692. Specifically, for example, on June 2, 2020, the SBA wire-transferred $88,990 into the Chase 1692 (the net amount requested for the original loan less the application fee).

    c. There were substantial wire transfers of EIDL funds out of the Chase 1692, some in the thousands and within a short period of time after the proceeds were deposited, for the benefit of KONIKOW, including payments for his credit card accounts, car payments, and an approximately $47,000 transfer to his solely owned Robinhood stock trading account.

17. Based on my training and experience, I know that the SBA relied at the relevant time on applicants' representations regarding their and their owners' criminal histories, particularly the lack thereof (and in particular, the lack of any recent convictions, pending criminal charges, and/or fraud-related convictions), and that such representations were material to the SBA's decision whether to issue a loan. I also believe, based on my training and experience, that if the SBA had known that KONIKOW had recently been convicted of a felony

9

federal fraud offense, no less one involving a scheme to defraud a government agency, the SBA would have denied KONIKOW's requests for EIDL funds.

### D. Conclusion re: KONIKOW's EIDL Fraud Scheme

18. As part of the EIDL fraud scheme against the SBA described above, KONIKOW applied for and received at least $804,700 in loans to which he was not entitled.

## V. CONCLUSION

19. For all the reasons described above, there is probable cause to believe that JUSTIN KONIKOW committed the Subject Offense.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1
by telephone on this 18th day of
July, 2025.

_____
HONORABLE A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE